# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**ROBERT WAYNE PRINCE,**

      **Plaintiff,**

**v.**                                **Case No. 3:16-cv-02317**

**ADMINISTRATOR CRAWFORD,**
**Western Regional Jail; et al.,**

      **Defendants.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

On December 13, 2016, Plaintiff Robert Wayne Prince ("Prince"), proceeding *pro se*, filed an amended complaint pursuant to 42 U.S.C. § 1983. (ECF No. 39).[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Prince's allegations, the undersigned **FINDS** that his claims against Executive Director David Farmer should be dismissed on initial screening, as they are without merit; his claims for non-monetary relief are moot; his

---

[1] Prince's original complaint was filed on March 9, 2016. (ECF No. 2 at 13). Pursuant to the "prison mailbox rule," the date of filing for Prince's complaint and amended complaint is the date on which he deposited his complaint with prison authorities as opposed to the date that the clerk of court received his pleadings. *United States v. McNeill*, 523 F. App'x 979, 981 (4th Cir. 2013) ("pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'") (citing *Houston v. Lack*, 487 U.S. 266, 266, 108 S. Ct. 2379, 2380, 101 L. Ed. 2d 245 (1988)).

claims against the defendants in their official capacities are barred by the Eleventh Amendment; and his allegations relating to access to the courts, the grievance procedure, disciplinary measures taken against him, retaliation, recreation areas, his eating utensil and cup, lack of contact visits, and the absence of a locker bay in his cell fail to state claims upon which relief may be granted. Prince's remaining allegations relating to being placed in full body restraints, living in a crowded cell, and sleeping on the floor state potentially plausible claims under § 1983 and are not subject to dismissal at this stage of the proceedings. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge dismiss the allegations against Executive Director David Farmer on initial screening and **GRANT, in part,** and **DENY, in part,** Defendants' Motion to Dismiss the Amended Complaint. (ECF No. 43).

## I.     <u>Relevant Facts</u>

In March 2016, Prince, who was incarcerated at the Western Regional Jail ("WRJ") in Barboursville, West Virginia, filed a § 1983 complaint against WRJ Administrator Crawford, Counselor Stepp, Counselor Wallace, and Correctional Officer ("C.O.") Dana Turley. (ECF No. 2). Prince asserted that on February 24, 2016 he lost his temper and "cussed" a counselor, who refused to provide Prince with the address of the warden of the "Carter County Detention Center."[2] (*Id.* at 4, 8). He claimed that the disagreement "snowballed" into a series of incidents that amounted to WRJ staff harassing him and "generally ignoring the law," beginning with him receiving 43 days of disciplinary segregation. (*Id.*). Prince appealed the disciplinary decision, waited ten days

_____

[2] Prince explained during a status hearing in this matter that he intended to write the warden of that facility to seek permission to correspond with his wife who was incarcerated at that location.

for a response, and then filed the instant action when the response was not forthcoming. (*Id.* at 5, 8). Prince also claimed in the complaint that he had filed grievances, which were denied by Administrator Crawford solely because they were hand-written; he was denied access to "indigent legal materials"; his email was blocked while he was in segregation; and he incurred another disciplinary charge in retaliation for threatening to sue the WRJ. (ECF No. 2 at 9-10).

As to his specific allegations against each defendant, Prince stated that Administrator Crawford violated his rights by denying him access to a proper grievance procedure, by upholding the actions of the counselors who denied him access to government institutions, and by upholding the "cruel punishment" of disciplinary segregation. (*Id.* at 4). With respect to Counselor Wallace, Prince alleged that Wallace refused to provide the warden's address and, when Plaintiff challenged his refusal, Wallace fabricated three of the five charges that resulted in Prince's disciplinary segregation period. (*Id.* at 5). Prince accused Counselor Stepp of repeatedly refusing to provide Prince with "indigent legal materials"; refusing to provide the warden's address; and unfairly accusing Prince of two additional charges, resulting in successive disciplinary segregation. (*Id.*). Finally, Prince alleged that C.O. Turley was not an impartial hearing officer and imposed excessive discipline. (*Id.*). Prince contended that C.O. Turley's practice was to offer an accused inmate a reduced punishment in exchange for the inmate waiving his right to a hearing; however, if the inmate declined, Turley invariably found the inmate guilty of the disciplinary charge and sentenced him to the maximum sentence. (*Id.*). In a catch-all provision of the complaint, Prince indicated that whenever he referred to actions by "the Staff" of WRJ, he meant all four of the

defendants. (ECF No. 2 at 8).

In his prayer for relief, Prince asked the Court to order that he be moved to another facility; his disciplinary charges relating to the "address incident" be removed from his inmate file; the WRJ be ordered to provide any government address requested by an inmate so long as it was not for the purpose of writing another inmate; award punitive damages for Prince's mental anguish and suffering; ensure that the WRJ followed the law in the future; require certain WRJ employees to be re-trained or educated regarding the grievance procedure and the rules for operation of jails and correctional facilities; and replace C.O. Turley as a hearing officer. (*Id.* at 5-6). Later that month, Prince filed a letter notifying the Court that he had been transferred to the Southwestern Regional Jail in Holden, West Virginia. (ECF No. 10 at 1). Prince complained that "moving him hours from home" was "part of the reprisals he faced from the Regional Jail Authority"[3] (*Id.*).

Following service of the complaint, the defendants filed a Motion to Dismiss and supporting memorandum. (ECF Nos. 16, 17). Defendants argued that they were entitled to sovereign immunity and/or qualified immunity from the allegations against them. (ECF No. 17 at 3). Defendants contended that, to the extent they were sued in their official capacities, they were not "persons" for the purpose of 42 U.S.C. § 1983 and were entitled to sovereign immunity under the Eleventh Amendment. (*Id.* at 6). Further, the defendants argued that they were entitled to qualified immunity, because they were performing discretionary functions and did not violate any "clearly established statutory or constitutional right" of Prince. (*Id.* at 7). Finally, the defendants argued that the

---

[3] This allegation was not included in Prince's subsequently filed Amended Complaint. Therefore, it is not a claim that he raises in this action.

Complaint should be dismissed as frivolous under the initial screening required by 28 U.S.C. § 1915A and that Prince's request for transfer was moot, as he had already been transferred to another facility. (*Id*. at 10-11).

On June 13, 2016, Prince moved to amend his complaint, requesting an opportunity to supplement and clarify his allegations. (ECF No. 26). The undersigned held a status conference in August 2016, during which Prince extrapolated on his claims. The undersigned granted Prince leave to amend his complaint. (ECF No. 28). Two motions seeking extensions of time in which to file the amended complaint were also granted. (ECF Nos. 34, 36). Prince ultimately filed his amended complaint on December 13, 2016, indicating that the amendment was actually an "addendum" to the original complaint. (ECF No. 39). In the amended complaint, Prince fleshed out the factual bases of his claims against the four named defendants, alleging the following:

- The actions of the WRJ staff "completely prohibited [him] from sending mail or email;"

- He was denied stationary and postage, although he was indigent;

- He was denied access to supplies related to legal matters;

- He was not allowed to call any attorney;

- He was denied "the same opportunities for mail as all other inmates" while he was in segregation, noting that his email was blocked once he mentioned that he was going to email his sister to tell her to contact an attorney;

- He was denied the address of the warden of another detention center;

- C.O. Turley was not an impartial hearing officer because he allowed Prince to be charged with duplicative rule violations and gave him the maximum sanctions

when he declined to plead guilty;

- WRJ staff abused and harassed him by giving him "duplicate and multiple false [disciplinary] charges;" (*Id.*).

- There was no consultation between the WRJ Administrator and the responsible physician before the imposition of disciplinary measures despite Prince's diagnoses of impulse control disorder and intermittent explosive disorder;

- Administrator Crawford refused to accept Prince's handwritten grievance because it had not been filed electronically, although previous non-conforming grievances were accepted;

- Prince's appeals of his grievances were not answered within the time period allotted by jail policy;

- Prince was placed in full-body restraints several times when escorted to speak to medical or senior staff when there for no indication that they were needed;

- Prince's disciplinary sanctions totaling 55 days of disciplinary segregation were excessive;

- The exercise spaces and cells did not conform to jail rules in square footage per inmate and certain amenities;

- Prince could not sanitize his drinking cup and had to borrow a spoon for meals;

- Instead of a law library, the only access to legal materials was the program Lexis Nexis, which Prince argues is geared toward legal professionals and "is hardly user friendly;" and

- Prince was refused contact visits.

(ECF No. 39). Further, Prince indicated that he wished to add David Farmer, Executive Director of the West Virginia Regional Jail and Correctional Facility Authority ("RJA"), as a defendant, on the basis that Mr. Farmer failed to respond to Prince's grievances and was vicariously liable for the actions of all of the regional jail employees. (*Id.* at 9).

Prince seeks various forms of injunctive and monetary relief, including expungement of all disciplinary charges related to the argument over the warden's address; official administrative reprimands of Counselors Wallace and Stepp followed by their dismissal or retraining; official administrative reprimand of C.O. Turley followed by his removal as hearing officer; $75,000.00 in damages for his stress and mental anguish; and $75,000 in punitive damages. (*Id.* at 9). For the other "violations" that he lists, Prince asks that the RJA be ordered to submit a preliminary plan for how it will implement changes so that all employees conform to the law; $150,000.00 in compensatory damages for the development of lower back problems, pain and suffering, mental anguish, and daily stress for nearly one year; and $150,000.00 in punitive damages. (*Id.* at 10).

On December 28, 2016, the defendants moved to dismiss the amended complaint and filed a supporting memorandum. (ECF Nos. 43, 44). They argue that Prince presumably sues them in their official capacities, as they are identified in the complaint by their names and employment titles. (ECF No. 44 at 4-7). Defendants contend that, to the extent Prince seeks money damages from them in their official capacities, they are immune from liability under the Eleventh Amendment to the United States Constitution. (*Id.*). Further, Defendants claim that they are entitled to qualified immunity in their personal capacities, because they were performing discretionary

functions and did not violate any "clearly established statutory or constitutional right" of Prince. (*Id.* at 7). In addition, Defendants assert that Prince fails to state a claim for relief against Administrator Crawford given that Prince makes no allegation that Crawford acted with deliberate indifference or had any reason to anticipate the alleged misconduct of the other defendants. (*Id.* at 11-12). Defendants broadly argue that the Complaint should be dismissed as frivolous under the initial screening required by 28 U.S.C. § 1915A, and they maintain that Prince's request for transfer is moot, as he has already been transferred to another facility. (*Id.* at 12-13).

On January 26, 2017, the undersigned notified Prince that he had a right to respond to the motion to dismiss, and he was given through February 17, 2017 in which to file a memorandum in opposition to the motion. (ECF No. 45). On February 13, 2017, Prince filed a motion requesting an enlargement of time to file a response, indicating that he had never received the motion and supporting memorandum. (ECF No. 46). The return address on Prince's envelope reflected that he was housed at the Stevens Correctional Center in Welch, West Virginia when he filed the motion for enlargement of time. The undersigned ordered the defendants to provide Prince with another copy of the motion and memorandum, and Prince was given seventeen days after receipt of the documents in which to file a response. (ECF No. 48).

Pursuant to the Order, the defendants mailed an additional copy of the memorandum in support of their motion to dismiss to Prince at Stevens Correctional Center. Defendants also hand-delivered various discovery materials to him at that location two days later. (ECF Nos. 49, 50). Despite being given additional time, Prince did not file a response to Defendants' motion to dismiss, and the time allotted for doing

so has long since passed. Therefore, the motion is ripe for resolution.[4]

## II.    <u>**Motion to Dismiss Standard**</u>

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal and factual sufficiency of a complaint. *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). In ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus,* 551 U.S. 89 (2007). The complaint must assert facts that are sufficient to "raise a right to relief above the speculative level" and support a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The Supreme Court explained the "plausibility" standard in *Ashcroft v. Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 1937 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Iqbal,* 1937 S. Ct. at 1950 (citing *Iqbal v. Hasty,* 490 F.3d 143, 157–158 (2nd Cir. 2007)). While the court is required to accept as true the factual allegations

---

[4] Prince has filed only one document since receiving an extension. That document provided the Court with notification that Prince was no longer incarcerated. Instead, he was now residing at Lifehouse in Huntington, West Virginia. (ECF No. 55).

asserted in the complaint, it is not required to accept the legitimacy of legal conclusions. *Iqbal,* 1937 S. Ct. at 1949. As such, to survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint).

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Discussion

Prince has raised multiple claims; some are without merit and some are entitled to further development. Before addressing Prince's allegations against the four named defendants, the undersigned will conduct an initial screening of the claims against Executive Director David Farmer.

### A.  *Initial Screening of Claims Against David Farmer*

Under 28 U.S.C. § 1915, the Court must screen each case in which a prisoner seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The Court must dismiss the case, or any part of it, if the complaint is "frivolous, malicious, or fails to

state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(b). A case is "frivolous" if it lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and it lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when viewing the factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint fails to contain enough facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Prince asserts that David Farmer, Executive Director of the RJA, is "ultimately responsible for the conduct of the Jail employees, and the adherence to rules, regulations, and law by actions of those employees." (ECF No. 39 at 9). However, "[t]here is no respondeat superior liability under § 1983." *Johnson v. Potomac Highlands Reg'l Jail*, No. CIV.A. 5:06CV1, 2007 WL 1258879, at *2 (N.D.W. Va. Apr. 30, 2007) (citing *Monell v. Dep't of Soc. Serv. of New York,* 436 U.S. 658, 691 (1978). In other words, "§ 1983 does not permit a state official to be held liable solely because one of his or her employees committed a tort." *Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002) (citing *Monell, supra*).

Notwithstanding the holding in *Monell*, a supervisor can be held liable in several ways. First, "liability will lie where it is affirmatively shown that the official charged

acted personally in the deprivation of the plaintiff's rights." *Johnson*, 2007 WL 1258879, at \*2 (citing *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1997)). Second, "when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible." *Id.* (citing *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1113 (4th Cir. 1982)). Third, "a supervisor may be liable under § 1983 if the following elements are established: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative casual link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citing *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994), *cert. denied,* 513 U.S. 813 (1994)). A plaintiff "cannot satisfy this burden of proof by pointing to a *single incident or isolated incidents* ...." *Oliver*, 250 F. Supp. 2d at 598–99. Rather, "supervisory liability may only be imposed where 'there is a history of widespread abuse.'" *Id.*

In the present action, Prince does not allege any personal involvement on the part of Executive Director Farmer, other than his non-response to grievances, which, as will be more fully discussed below, fails to state a claim upon which relief may be granted. Likewise, Prince makes no showing that he was harmed pursuant to an official policy or custom for which Executive Director Farmer was responsible. Indeed, he contends that his injuries resulted from WRJ employees **not** following the official policies and

customs. Finally, Prince alleges no facts, which support a finding that Executive Director Farmer was deliberately indifferent to a pattern of offensive behavior, or that he tacitly authorized conduct that caused a particular constitutional injury to Prince. Instead, Prince makes only a conclusory claim that Executive Director Farmer is liable for the acts or omissions of others, because of his position as Executive Director of the RJA. Therefore, the undersigned **FINDS** that Prince fails to state a claim for personal or supervisory liability against Executive Director Farmer and the claims against him should be dismissed.

### B. Claims for Injunctive Relief

As a prerequisite to the exercise of judicial authority, the complaint before the court must present an actual case or justiciable controversy. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d. 689, 693-94 (4th Cir. 1983). "The requisite personal interest that must exist at the commencement of the litigation ... must continue throughout its existence. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration

there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). "Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in any way the injury he originally asserted." *Id.*

Nevertheless, a plaintiff's claim should not be dismissed as moot if there is sufficient evidence to conclude that the action is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). Except in the context of a class action, the "capable of repetition, yet evading review" doctrine is applicable only where two elements combine: (1) the challenged action was "in its duration too short to be fully litigated prior to its cessation or expiration," and (2) there is "a reasonable expectation that the same complaining party would be subjected to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17. The burden on a prisoner to establish post-transfer viability of such a claim is heavy. The prisoner must make a reasonable showing "that he will again be subject to the alleged illegality." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983)). In *Higgason*, an inmate alleged that his claim for injunctive relief made pursuant to a § 1983 claim should not be dismissed as moot, even though he was no longer at the offending facility, because his return to that facility was a "virtual certainty." *Id.* The court rejected this contention as a ground for applying the exception,

stating, "[s]uch an allegation does not amount to a 'showing' or a 'demonstration' of the likelihood of retransfer." *Id.* Accordingly, mere conjecture that a plaintiff may return to a prison facility and again face the alleged wrong is not sufficient to meet the mootness exception. *Id.*

The record reflects that Prince is no longer incarcerated in the WRJ; instead, he is residing at Lifehouse, a community facility located in Huntington, West Virginia. (ECF No. 55). Prince has not made a reasonable showing that he will return to the WRJ and be subjected to the same alleged wrongs. Therefore, the undersigned **FINDS** that (1) Prince's departure from the WRJ renders his request for prospective injunctive relief moot and (2) the circumstances do not support a conclusion that Prince's claims for non-monetary relief fall within the "capable of repetition, but evading review" exception to the doctrine of mootness.

### C. *Claims for Monetary Damages*

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." *Id.* Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v.*

*Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at \*2 (D.S.C. Sept. 8, 2010);

*See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim

for relief in an action brought under § 1983, respondents must establish that they were

deprived of a right secured by the Constitution or laws of the United States, and that the

alleged deprivation was committed under color of state law."). If either of these elements

is missing, the complaint fails to state a claim for relief under § 1983. *Id.* at 50.

### 1. *Official Capacity Claims*

As an initial matter, the undersigned considers the defendants' assertion that

Prince sued them in their official capacities; as such, the defendants argue that they are

immune from suit under the Eleventh Amendment to the United States Constitution.

(ECF No. 44 at 6-7). In *Will v. Mich. Dept. of State Police,* the Supreme Court of the

United States considered "the question whether a State, or an official of the State while

acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979,

42 U.S.C. § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of

the statute, the Supreme Court concluded that Congress never intended to subject States

to liability for deprivations of civil liberties when such suits would have otherwise been

barred by the States' sovereign immunity. *Id.* at 66. The Court further held that a State's

officials "acting in their official capacities" were not "persons" under § 1983, explaining:

"Obviously, state officials literally are persons. But a suit against a state official in his or

her official capacity is not a suit against the official; rather, it is a suit against the official's

office. As such, it is no different from a suit against the State itself." *Id* at 71. (citations

omitted).

The Court later clarified its holding in *Will,* making a distinction between officials

acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not

allege capacity explictly, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed.App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Here, Prince does not specify whether he intends to sue the defendants in their official or personal capacities. Consequently, the undersigned must review the complaints and make a fair determination. Prince identifies certain actions of each defendant that he contends violated the law. For instance, he contends that C.O. Turley committed various errors in his disciplinary proceeding and failed to act as an impartial disciplinary hearing officer; Counselor Wallace prepared false incident reports against him and charged him with duplicate charges; and Administrator Crawford refused to accept a grievance that Prince submitted. (ECF No. 39 at 3-5). (*Id.* at 9). Prince's specific claims against Counselor Stepp are not evident from the amended complaint, although Prince states in his original complaint that Counselor Stepp repeatedly refused to

provide him "legal materials," despite Prince being indigent, and also unfairly accused Prince of two disciplinary charges. (ECF No. 2 at 5). Prince also includes a litany of claims against "the WRJ staff" that aggrieved him in various ways, such as by blocking his email account, denying him access to his lawyer, placing him in full body restraints during transport, and denying him contact visits. (*Id.* at 3, 6, 8). Lastly, Prince complains that he was provided inadequate exercise and housing accommodations at the WRJ. Prince requests several forms of prospective injunctive relief, including an order expunging the disciplinary charges from his file, an official reprimand of the defendants, and an order requiring the RJA to submit a plan to ensure that its employees follow the law. (*Id.* at 9-10). Prince also requests monetary damages in the total amount of $450,000.00.

Given all of the above, considering the fact that Prince asserts specific claims against certain individuals and requests both injunctive and monetary relief, it appears that Prince sued the defendants in both their official and personal capacities. Thus, the extent that Prince seeks money damages from the defendants for acts done in their official capacities, the undersigned **FINDS** that such prison officials are not "persons" liable for money damages under § 1983 and **RECOMMENDS** that Prince's monetary claims against the defendants in their official capacities be dismissed.

### 2. *Personal Capacity Claims*

The undersigned next examines Prince's specific claims against the defendants in their personal capacities. Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas," ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly

established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. As such, if a court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a court determines that the facts alleged by the plaintiff do not support a reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

"[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (citing *Tobey v. Jones,* 706 F.3d 379, 393–94 (4th Cir. 2013). "So long as qualified immunity does not turn on *disputed facts,* 'whether the officer's actions were reasonable is a question of pure law.'" *Id.* (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*)). However, in many cases, "immunity is peculiarly well-suited for resolution at the summary judgment stage." *Id.* (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)).

### i. *Access to the Courts*

Prince asserts that the "WRJ staff illegally and absolutely prevented him from making contact with any person or entity outside the WRJ facility." (ECF No. 39 at 2). Specifically, he states that "WRJ staff" denied him stationary and postage for legal matters, although he was indigent; did not allow him to call his attorney; blocked his email while he was in disciplinary segregation because he threatened to email his sister

and tell her to contact an attorney; refused to provide him the address of the "Carter Co. Federal Holding facility in Kentucky" so that he could correspond with the warden of that facility; and did not provide meaningful access to legal materials as the WRJ did not have a law library and only provided the program Lexis Nexis, which is not "user friendly" to those who are untrained in the legal profession. (*Id.* at 2-3). Prince contends that in order for him to properly appeal his administrative grievance regarding "the whole situation" within the allotted time frame, he had to "go without food because he had no choice but to trade his trays to another inmate for postage needed." (*Id.* at 2). In his amended complaint, Prince does not identify a particular person responsible for the alleged violations of his rights. (*Id.* at 2-3). However, in his original complaint, he states that Counselor Wallace refused to provide the address that he requested and that Counselor Stepp repeatedly refused to provide him "indigent legal materials" and also refused to provide the warden's address. (ECF No. 2 at 5). Prince does not specify under what circumstances he "wasn't able to call an attorney" or identify a person that allegedly prevented him from doing so; similarly, he does not state that a certain person denied him access to legal research materials. (ECF No. 39).

Inmates have a constitutional right to meaningful access to the courts and persons acting under the color of state law may not abridge, impair, or impermissibly burden an inmate's ability to exercise this right to access.[5] *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Talbert v. Jabe*, No. 7:07-CV-00450, 2007 WL 3339314, at *6 (W.D. Va.

---

[5] However, it should be noted that the right to access the courts only requires the state to provide the necessary tools for inmates to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Arehart v. Robinson*, No. 7:06-CV-00268, 2006 WL 1288316, at *2 (W.D. Va. May 5, 2006). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (citing *Casey,* 518 U.S. at 355).

Nov. 8, 2007) (citing *Hudspeth v. Figgins,* 584 F.2d 1345, 1347 (4th Cir. 1978)). An inmate may assert a colorable § 1983 claim when a defendant denies him meaningful access to the courts by refusing postage for legal mail or access to his attorney if the inmate **suffered actual injury or specific harm to his litigation efforts resulting from such denial.** *Murray v. Keller*, No. 5:10-CT-3038-FL, 2011 WL 4443143, at *6 (E.D.N.C. Sept. 23, 2011) ("In order to state a claim for denial of access to the courts, the inmate must show actual injury or that a defendant's conduct hindered his efforts to pursue a legal claim.") (internal citations omitted); *Arehart v. Robinson*, No. 7:06-CV-00268, 2006 WL 1288316, at *2 (W.D. Va. May 5, 2006) (citing *Lewis v. Casey,* 518 U.S. 343, 355 (1996)) ("Where an inmate has had access to court, but alleges facts showing denial of some item necessary for meaningful pursuit of his litigation, such as adequate postage, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item."); *Cannon v. Hull*, No. 1:16CV359 (LMB/TCB), 2017 WL 359184, at *7 (E.D. Va. Jan. 23, 2017) ("To make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). Actual injury requires the inmate 'to demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded.' *Jackson v. Wiley*, 352 F. Supp. 2d 666, 679–80 (E.D. Va. 2004).")

In the present case, Prince does not expressly allege that the denial of mailing materials, phone call(s) to his attorney, email access in disciplinary segregation, or the mailing address of a warden of another facility interfered with his ability to access the

courts, or caused him any adverse legal consequences. Beginning with Prince's first claim regarding stationary and postage for legal materials, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them." *Bounds,* 430 U.S. at 824–25. However, "prisoners do not have an unlimited right to free postage in connection with the right of access to the courts." *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (internal quotation marks and citation omitted). In order for Prince to state a colorable claim that the denial of free postage or stationary violated his constitutional rights, he must "provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." *Id.* (citations omitted). Prince makes no such allegation. For instance, Prince does not identify any legal action that he was precluded from instituting or defending, or any pending action that was impacted by the alleged denial of mailing materials. Rather, Prince states that he had to relinquish his food tray to another inmate and "go without food" in exchange for the necessary postage to appeal his administrative grievance.

To the extent that Prince asserts an Eighth Amendment claim relating to the fact that he had to "go without food" in order to obtain postage, this claim must likewise be dismissed. To state an Eighth Amendment claim, Prince must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin,* 952 F.2d 820, 824 (4th Cir.1991) (citation omitted). Prince makes no allegation that any of the defendants knew or had any reason to know that he was bartering his food for postage, nor does he make any claim that he suffered any injury as a result. (ECF No. 39); *Farmer*, 511 U.S. 825, 837

(1994) (To state a claim under the Eighth Amendment, the plaintiff must show that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Defendants cannot be held liable for Prince's own decision to trade his food for postage. *See Arehart v. Robinson*, No. 7:06-CV-00268, 2006 WL 1288316, at *3 (W.D. Va. May 5, 2006) ("Arehart has no Eighth Amendment claim against the defendants for the hunger that resulted from his own decision to barter away his food in exchange for legal materials" because there was no allegation that the defendants "knew of and ignored a significant risk that plaintiff would suffer serious or significant mental or physical injury as a result of their inaction and that he, indeed, suffered such injury").

Next, Prince contends that he "wasn't able to call an attorney." (ECF No. 39 at 2). However, he does not allege that he was entirely precluded from contacting his attorney through other means or at other times. Therefore, his claim "falls short of the total denial of access to counsel." *Engel v. Francis*, No. 3:09CV359, 2010 WL 3894122, at *3 (E.D. Va. July 27, 2010), *report and recommendation adopted,* No. 3:09CV359, 2010 WL 3894118 (E.D. Va. Oct. 4, 2010). Moreover, he again does not allege that he suffered any harm that is traceable to such action. *Id.* Therefore, even construing the facts in the light most favorable to Prince, he fails to state a plausible claim that his constitutional rights were violated. *See, e.g., Cannon*, 2017 WL 359184, at *8 (E.D. Va. Jan. 23, 2017) ("plaintiff has not established that he suffered a harm as a result of not being able to contact his attorney because he has not identified any legal matter that was pending at the time or otherwise explained why he needed to contact his attorney.") (citing

*Vanexass v. Rosser*, 875 F.2d 317 (4th Cir. 1989); *see also Anderson v. Green*, No. CIV.A.AMD-08-2708, 2009 WL 2711885, at *4 (D. Md. Aug. 24, 2009) (The plaintif "failed to show he was otherwise unable to contact his attorney through other means or that his inability to contact his attorney caused him real legal harm."). "Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use." *Engel*, 2010 WL 3894122, at *3 (citing *Aswegan v. Henry,* 981 F.2d 313, 314 (8th Cir.1992)). Prince fails to state adequate factual allegations to demonstrate that he was denied access to the courts based upon the alleged restrictions on his telephone use.

Furthermore, Prince does not identify a ***person*** that allegedly violated his rights. He merely states that "Staff at WRJ" did not permit him to call an attorney. Although he broadly stated in his original complaint that WRJ Staff meant the four named defendants, Prince is still required to state factual allegations indicating each defendant's role in the alleged violation. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Harvey v. Simon, et al.*, No. 3:16CV604, 2017 WL 1706262, at *3 (E.D. Va. Apr. 28, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Consequently, "the plaintiff must allege facts that affirmatively show 'that the official charged acted personally in the deprivation of the plaintiff[']s rights.'" *Id.* (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). "A vague reference to a group of defendants, without any specific allegation tying the individual defendants to the alleged unconstitutional conduct, fails to state a claim for relief with respect to those defendants." *Id.* at *4. Furthermore, collective terms such as "staff" are not "persons" that are amenable to suit

under § 1983. *Id.* (dismissing claims against "medical staff"); see also *Harris v. Baltimore City Det. Ctr.*, No. CIV.A. PWG-14-217, 2014 WL 994377, at *1–2 (D. Md. Mar. 13, 2014) ("Additionally, use of the term 'staff or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a 'person' as required [in] section 1983 actions' and "a 'group of personnel' also "is not a 'person for purposes of § 1983.'") (internal citations omitted).

Prince similarly fails to state a plausible claim for relief regarding his alleged lack of email access while in disciplinary segregation. (ECF No. 39 at 2). "[P]risoners have no First Amendment constitutional right to access email." *Grayson v. Fed. Bureau of Prisons*, No. 5:11CV2, 2012 WL 380426, at *3 (N.D.W. Va. Feb. 6, 2012) (citation omitted). "While prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email." *Chatman v. Clarke*, No. 7:16CV00509, 2016 WL 7480426, at *2 (W.D. Va. Dec. 29, 2016) (internal citations omitted). Here, contrary to Prince's claim that "WRJ staff illegally and absolutely prevented [him] from making contact with any person or entity outside the WRJ facility," (ECF No. 39 at 2), he clearly had the ability to communicate with the outside world and, in particular, this Court, via regular mail. Prince mailed his original complaint to the Court while incarcerated in the WRJ. (ECF No. 2); *See, e.g., Chatman*, 2016 WL 7480426, at *2 ("Chatman clearly has the ability to communicate with the outside world through the regular mail, as he posted his § 1983 Complaint to the court. He has not been deprived of his First Amendment rights here."). Therefore, his allegation that he was unable to communicate with the outside world is unequivocally disproven by his own pleading. This claim is subject to

dismissal for the additional reason that Prince fails to allege any "person" that denied him access to email.

Likewise, Prince makes no showing that the defendants' refusal to provide Prince with the address of another correctional facility's warden constituted a constitutional deprivation, or that it injured him in any way. Prince provides no factual or legal basis establishing his entitlement to such information, or that the staff's refusal to provide the address was a transgression of constitutional magnitude. Therefore, Prince clearly fails to state a claim upon which relief may be granted relating to this allegation.

Lastly, the undersigned considers Prince's claim that he was denied meaningful access to the courts because the WRJ did not have an adequate law library and failed to provide access to legal texts; instead, providing only computer access to Lexis Nexis. Prince complains that he had no computer training and the program is geared toward aspiring lawyers and, therefore, is "hardly user friendly." (ECF No. 39 at 8). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, the obligation is not all-encompassing and certainly does not "guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey,* 518 U.S. 343, 355 (1996). In *Lewis*, the Court made clear that "*Bounds* did not create an abstract, freestanding right to a law library or legal assistance." *Id.* at 351; *see, also, Murphy v. Inmate Sys. Mgmt., Inc.*, No. 1:03-0170, 2008 WL 793631, at *10 (S.D. W. Va. Mar. 20, 2008) ("[P]risoners do not have a right

per se to a law library or legal assistance."). Instead, according to the *Lewis* Court, *Bounds* merely reaffirmed a prisoner's right to meaningfully access the courts. *Lewis*, 518 U.S. at 351. The Court explained that in order for a prisoner to bring a plausible claim that access to the courts was obstructed by inadequate legal assistance, the prisoner must demonstrate actual injury or "that alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* For example, a prisoner might show "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known" or that "he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.*

Prince does not assert that he suffered any identifiable harm due to the allegedly deficient legal resources provided at the WRJ. Indeed, as noted, Prince filed the original complaint in this action while housed at that facility. (ECF No. 2). Clearly, he was not prejudiced in this civil action by the legal resources available at the WRJ, and he does not identify any other injury that he suffered. Therefore, Prince again fails to provide a sufficient factual foundation to support a *prima facie* case under § 1983.

Accordingly, based upon the above, the undersigned **FINDS** that Prince's claims asserting that he was denied access to the courts lack a sufficient factual basis and should be dismissed.

### ii. Grievance Process

Prince asserts that the grievance process at the WRJ was deficient. He contends that Administrator Crawford refused to accept one of his grievances because it was

handwritten rather than filed electronically, although previous non-conforming grievances were accepted. (ECF No. 39 at 5-6). Prince also asserts that the appeal of his grievance was not answered within the time allotted by jail policy. (*Id.* at 6).

Claims based upon deficiencies in a prison grievance procedure are not cognizable under § 1983 because "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see also Brown v. G.P. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994) (Because a state grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the state's grievance procedure is not actionable under § 1983) (citations omitted); *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) ("Thus, any violations of appeal procedures state at most a violation of state law and does not implicate federal due process rights."). Further, "because state grievance procedures are separate and distinct from state and federal legal procedures, an institution's failure to comply with state grievance procedures does not compromise its inmates' right of access to the courts. *Brown, supra.* "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Oliver v. Powell*, 250 F. Supp. 2d 593, 602–03 (E.D. Va. 2002) (citations omitted). Thus, if Prince's grievances concerned actions which injured his constitutionally protected interests, he could file a claim under § 1983 to seek redress for that injury; however, § 1983 does not provide him an avenue to seek redress for the state's failure to address his grievances. *Id.* Therefore, the undersigned **FINDS** that

Prince fails to state a meritorious claim relating to deficiencies in the WRJ's grievance procedure.

### iii. Disciplinary Actions

Prince next asserts various challenges to disciplinary charges and sanctions that he received. He contends that C.O. Turley failed to act as an impartial hearing officer, because he allowed Prince to be charged with duplicative violations and offered to give Prince half of the maximum punishment for each charge if Prince would plead guilty. He also states that there was no consultation between the WRJ Administrator and the responsible physician before the imposition of disciplinary measures despite Prince's diagnoses of impulse control disorder and intermittent explosive disorder. Prince further states that his sanction of 55 days of disciplinary detention was excessive.

In *Heck v. Humphrey*, the United States Supreme Court held that a state prisoner could not maintain a § 1983 action for damages if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his [criminal] conviction or sentence," and the relevant conviction or sentence had not been overturned or invalidated. *Id.*, 512 U.S. 477, 487 (1994). A few years later, the Supreme Court extended this holding to disciplinary convictions that resulted in the loss of good time credits, reasoning that a prisoner could not bring a § 1983 action that would "necessarily imply the invalidity of the punishment imposed," as success of such action would result in restoration of good time credits; thus, affecting the length of the prisoner's confinement. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Subsequent cases make clear that the rationale set forth in *Heck* and extended in *Edwards* does not bar all suits challenging disciplinary proceedings, but only those that, if successful, would necessarily demonstrate the

invalidity of confinement or its duration. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Muhammad v. Close*, 540 U.S. 749, 754, As it presently stands, "§ 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner." *Wilkinson*, 544 U.S. at 81.

The undersigned recognizes that some district courts in the Fourth Circuit have interpreted *Heck* and its progeny of case law to indicate that a prisoner can never bring a § 1983 claim that, if successful, would imply the invalidity of a disciplinary conviction. *See Pettry v. State of W. Virginia*, No. 2:10-CV-00804, 2010 WL 4181275, at *2 (S.D.W. Va. Sept. 17, 2010), *report and recommendation adopted sub nom. Pettry v. W. Virginia*, No. 2:10-CV-00804, 2010 WL 4175037 (S.D.W. Va. Oct. 20, 2010) (finding that *Heck* and *Edwards* barred the plaintiff's challenge to his disciplinary finding because plaintiff did not show that such finding had been invalidated); *Chestnut v. Brown*, No. CIV.A. 3:10-1784-RMG, 2011 WL 1543337, at *2 (D.S.C. Apr. 4, 2011), *report and recommendation adopted,* No. 3:10CV-1784-RMG-JRM, 2011 WL 1543301 (D.S.C. Apr. 21, 2011), *aff'd,* 444 F. App'x 677 (4th Cir. 2011) (Plaintiff, who was placed in disciplinary detention for 90 days and had some privileges restricted could not maintain § 1983 action because "the awarding of damages and/or injunctive relief to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing and thus his claims are barred under *Heck* and *Edwards*.")

However, in this case, Prince does not assert that he lost any good time credits as a result of his disciplinary conviction. Therefore, the undersigned finds that his claim is not barred by *Heck* and *Edwards* because he does not seek immediate or speedier release from custody. *See Wilkinson*, 544 U.S. at 81; *see also Preiser v. Rodriguez*, 411

U.S. 475, 508 (1973) ("If a prisoner's sole claim is that he was placed in solitary confinement pursuant to an unconstitutional disciplinary procedure, he can obtain federal injunctive relief and monetary damages in an action under § 1983."); *Goodman v. Ramey*, No. 2:12-CV-00439, 2012 WL 5967264, at *11 (S.D.W. Va. May 17, 2012), *report and recommendation adopted,* No. CIV.A. 2:12-0439, 2012 WL 5966642 (S.D.W. Va. Nov. 29, 2012) ("Here, since the plaintiff did not lose good time credits, his challenge is not based on a change in the duration of his sentence, as governed by *Edwards* but, rather, it is based on a change in his security classification. Thus, the overriding question before this court is whether the plaintiff has a liberty interest, protected by the Due Process Clause, in not being classified in segregation. If he has no protected liberty interest, the due process violations he alleges are not actionable.")

Instead, the proper inquiry in this case is whether Prince was deprived of a state-created liberty interest protected by the Due Process Clause. As established in *Sandin v. Conner*, in order for Prince to show that he possessed such a liberty interest, requiring due process protections during his disciplinary hearing, he must demonstrate that (1) the conditions of his disciplinary detention exceeded the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement in disciplinary detention created an atypical or significant hardship in relation to the ordinary incidents of prison life. *McNeill v. Currie*, 84 F. App'x 276, 277 (4th Cir. 2003) (citing *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995); *Goodman, supra.*

In the instant action, there is no contention or logical inference that Prince's confinement in disciplinary detention exceeded his original sentence of incarceration in such an unexpected manner as to give rise to the protection of the Due Process Clause

by its own force. Therefore, the question before the Court is whether Prince's confinement in disciplinary detention "imposed such an atypical hardship on [him] *vis a vis* ordinary prison life that [he] possessed a liberty interest in avoiding it." *Beverati v. Smith*, 120 F.3d 500, 502–03 (4th Cir. 1997). "Placement in [disciplinary] segregation, by itself, does not create an atypical or significant hardship in relation to the ordinary incidents of prison life." *McNeill, v. Norris*, No. 5:15-CT-3193-D, 2017 WL 1286816, at *2 (E.D.N.C. Apr. 6, 2017) (citing *Incumaa*, 791 F.3d at 527. "[A] prisoner does not establish a state-created liberty interest in avoiding disciplinary segregated confinement if such confinement 'does not present a dramatic departure *from the basic conditions of [the inmate's] indeterminate sentence.*" *Prieto v. Clarke*, 780 F.3d 245, 254 (4th Cir. 2015), *cert. dismissed,* 136 S. Ct. 319 (2015) (emphasis in original). In order to determine whether Prince possessed a liberty interest, the Court must compare the conditions to which he was exposed in disciplinary detention with those that he could expect to experience as an ordinary incident of prison life. *Beverati*, 120 F.3d 503. "This analysis necessarily is fact specific." *Id*. However, the determination of whether the conditions imposed an atypical and significant hardship creating a liberty interest is a question of law. *Id*.

Prince does not allege facts to even potentially demonstrate that conditions in disciplinary detention were so atypical that they created a liberty interest under *Sandin*. He merely contends that he lost email privileges and a suitable exercise area while in disciplinary detention. However, as previously discussed, this argument fails to establish a violation of constitutional proportion. Otherwise, while Prince contends that 55 days in disciplinary detention was excessive and unwarranted, he fails to allege any

significant hardship that he suffered in relation to ordinary incidents of prison life. Therefore, he does not raise a plausible claim that he was deprived of a federally protected liberty interest without due process of law. *See, e.g., Goodman*, 2012 WL 5967264, at *10-14; *Donohue v. Diggs*, No. 7:11CV00090, 2011 WL 795889, at *2-4 (W.D. Va. Mar. 1, 2011). Further, Prince's other assorted claims that the jail policies were not followed in his disciplinary proceedings fail to state a federally cognizable claim. *Donohue v. Diggs*, No. 7:11CV00090, 2011 WL 795889, at *3 (W.D. Va. Mar. 1, 2011) ("Moreover, a state's failure to abide by its own procedural regulations is not a federal due process issue and is, therefore, not actionable under § 1983.") (internal citation omitted). Accordingly, the undersigned **FINDS** that Prince's claims regarding the disciplinary process at the WRJ fail to state a claim upon which relief can be granted and should be dismissed.

### iv. Retaliation

Prince claims that he was excessively disciplined after he "cuss[ed] out" a counselor for refusing to provide the address of the warden of another facility and threatened to "sue if the rules weren't followed." (ECF No. 39 at 3). He contends that "[i]n all, [his] argument with staff over his right to correspondence resulted in (7) disciplinary write-ups." *Id.* In other words, Prince contends that he was given disciplinary charges in retaliation for speaking his mind. "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Snodgrass v. Messer*, No. 7:16CV00050, 2017 WL 975992, at *4 (W.D. Va. Mar. 10, 2017) (citing *American Civil Liberties Union v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993).

Under § 1983, claims of retaliation are "treated with healthy skepticism" because "many actions by prison officials are by definition 'retaliatory,'" as they are rendered in response to prisoner conduct or misconduct. *Id.* (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996)); *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

Prince suggests that he received excessive discipline for exercising his First Amendment right to free speech. Importantly, "not every reaction made in response to an individual's exercise of his First Amendment right to free speech is actionable retaliation." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000) (citations omitted). "Rather, a § 1983 retaliation plaintiff must demonstrate that the defendant's actions had some adverse impact on the exercise of the plaintiff's constitutional rights." *Id.* (citations omitted). Specifically, Prince must show (1) that his speech was protected, (2) that the defendant's alleged retaliatory action adversely affected his constitutionally protected speech; and (3) a causal relationship exists between the protected speech and the defendant's retaliatory action. *Id.*

Prince does not offer "sufficient facts which tend to support his allegation of a retaliation motive behind the defendants' actions." *Garrett v. Angelone*, 940 F. Supp. 933, 944 (W.D. Va. 1996), *aff'd*, 107 F.3d 865 (4th Cir. 1997) (citing *White v. White,* 886 F.2d 721 (4th Cir.1989)). Rather, he simply states that he used obscene language against staff members and was then subjected to what he considered to be unfair and excessive discipline. Assuming *arguendo* that Prince engaged in constitutionally protected speech, he asserts no facts showing retaliatory animus or causation. Rather, he claims that certain consequences followed his outbursts and then surmises that those consequences were motivated by a desire for retaliation. "Bare assertions of retaliation

do not establish a claim of constitutional dimensions." *Id.* (citing *Adams v. Rice,* 40 F.3d 72 (4th Cir.1994).

A "complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *French v. Smith*, No. CIV.A. CCB-08-3476, 2012 WL 831881, at *6 (D. Md. Mar. 9, 2012), *aff'd*, 475 F. App'x 879 (4th Cir. 2012) (internal quotation marks and citations omitted). A *pro se* complaint for retaliation must include "some minimum level of factual support." *Id.* (citing *White,* 886 F.2d at 724). Prince fails to assert the necessary factual support to maintain a claim for relief. *Id.* (citing *Ashann–Ra v. Commonwealth of Va.,* 112 F.Supp.2d 559, 574 (W.D.Va. 2000) (finding an inmate's allegation that an officer placed the inmate in segregation for threatening to sue failed to state claim of retaliation for exercise of protected right). Therefore, the undersigned **FINDS** that Prince fails to state a viable claim for retaliation under § 1983 and that claim should be dismissed.

### v. Full Body Restraints

Prince's amended complaint adds a claim that "several times when [he] was escorted to medical or to speak to senior staff, full body restraints were used when there was no indication or need for them according to [jail policy]." (ECF No. 39 at 6). The use of excessive force against an inmate by a correctional officer plainly violates the Eighth Amendment's cruel and unusual punishment clause, *Wilkins v. Gaddy,* 559 U.S. 34 (2010), and is cognizable under 42 U.S.C. § 1983. To establish a constitutional claim of excessive force, Prince must show that the defendants "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie,* 155 F.3d 479, 483 (4th Cir.1998) (quoting *Whitley v. Albers,* 475 U.S. 312, 320 (1986)). Thus, there is a subjective

component to the claim in that the defendants must have "acted with a sufficiently culpable state of mind." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). Objectively, the injury inflicted on the inmate must be "sufficiently serious." *Id.* However, the predominate focus is not on the severity of the injury, because when prison officials "maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evident." *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010). "The proper inquiry is whether the force applied was in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Taylor,* 155 F.3d at 483. "In determining whether [this] constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Orem v. Rephann,* 523 F.3d 442, 446 (4th Cir. 2008) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973)).

The Supreme Court has recognized the "danger of overstepping the boundaries of judicial review" of correctional employees' policies, practices, and prophylactic measures to maintain internal order, security, and discipline in correctional facilities. *Jackson v. Morgan*, 19 F. App'x 97, 100 (4th Cir. 2001). Likewise, the Fourth Circuit is "mindful that prison officials should be allowed latitude in taking preventive measures to maintain safety of the officers and medical workers." *Id.* "[D]e minimis injury defeats a plaintiff's excessive force claim absent the most extraordinary circumstances, i.e., unless the force used was repugnant to the conscience of mankind." *Id.* (internal

quotation marks and citations omitted). "Thus, absent the most extraordinary circumstances, an inmate cannot prevail on an excessive force claim unless he proves more than *de minimis* pain or injury." *Moore v. Miller*, No. 7:08CV00614, 2009 WL 113258, at \*2–3 (W.D. Va. Jan. 15, 2009), *aff'd*, 349 F. App'x 815 (4th Cir. 2009). "The use of restraints to control prison inmates is not per se unconstitutional." *Id.* (citing *Williams v. Benjamin,* 943 F.2d 1572, 761 (4th Cir. 1991)).

It is not readily apparent from Prince's amended complaint which of the named defendants, if any, placed him in full body restraints, nor does he state that he suffered any physical injury from being placed in full body restraints. However, the fact that he may not have suffered significant physical injury is not fatal to his claim and is certainly not dispositive of the claim at this stage in the proceedings. *See, e.g., Humple v. Hilewitz*, No. 2:13-CV-14618, 2016 WL 1117600, at \*3 (S.D.W. Va. Mar. 22, 2016) ("In *Hudson v. McMillian*, 503 U.S. 1, 4 (1992), the Supreme Court of the United States expressly held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer physical injury."). Nevertheless, Prince must identify a person amenable to suit in order to state an Eighth Amendment claim for excessive force under § 1983. Given that Prince states a potentially viable claim sufficient to withstand disposition at this preliminary stage of the proceedings, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss as to this claim be **DENIED** and Prince be permitted an opportunity to develop this claim and identify which defendants placed him in full body restraints.

### vi. Recreation Areas

Prince next argues that the "outside recreation yard" at the WRJ was actually a

600 square foot cinder block area with a concrete floor and mesh ceiling. (ECF No. 39 at 7). He states that there were no restrooms or drinking facilities and inmates frequently urinated in the corners of the area. (*Id.*). He contends that it was cramped and unsanitary and that it constituted cruel and unusual punishment to never let inmates "touch the earth." (*Id.*). Prince further asserts that the indoor recreation areas or "dayrooms" were inadequate because twice the amount of inmates use them than the amount for which they were originally designed. (*Id.* at 8).

Prince's allegations fail to state a cognizable Eighth Amendment claim regarding the conditions of his confinement. In certain circumstances, "restricting inmates' opportunities for physical exercise constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Mitchell v. Rice*, 954 F.2d 187, 191–92 (4th Cir. 1992). "It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Id.* (citations omitted); *Parnell v. Waldrep*, 511 F. Supp. 764, 770 (W.D.N.C. 1981) (Inmates were denied the opportunity for meaningful exercise where some of them had access to a narrow "runaround" measuring a few feet in width and half of them were confined to their cells).

However, Prince presents no facts to indicate that his ability to exercise was restricted to the level of cruel and unusual punishment. Although he may believe that he was entitled "to a larger exercise area with restrooms and water fountains, inadequate exercise facilities is not another name for unconstitutional exercise facilities, i.e., cruel and unusual punishment." *Gholson v. Murry*, 953 F. Supp. 709, 723–24 (E.D. Va. 1997). Prince "fails to state how he was prohibited from exercise or that he suffered any serious

or significant physical or emotional injury as a result." *Williams v. Mathena*, No. 7:10-CV-00404, 2010 WL 4226126, at *3 (W.D. Va. Oct. 25, 2010); *Clay v. Miller,* 626 F.2d 345, 347 (4th Cir. 1980) (Finding no constitutional violation where inmates only had access to indoor day room for exercise, but no showing was made that mental or physical health was threatened).

Furthermore, Prince does not state a cognizable claim regarding lack of restroom facilities and drinking fountains or the alleged unsanitary conditions of the recreation area. Undoubtedly, "subjecting a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Hooks v. Chapman*, No. CA 0:12-2416-GRA-PJG, 2012 WL 6674494, at *3 (D.S.C. Nov. 30, 2012), *report and recommendation adopted,* No. 0:12-CV-02416-GRA, 2012 WL 6674491 (D.S.C. Dec. 21, 2012) (citing *McCray v. Burrell,* 516 F.2d 357, 366–69 (4th Cir. 1974)). However, "a temporary deprivation of bathroom facilities does not rise to the level of an Eighth Amendment violation." *Id.* (collecting cases). Prince does not allege that he was denied access to the restroom or water fountain while in the recreation area, but only that those amenities were not specifically accessible from that location. He also does not allege any injury that he attributes to the lack of such amenities or the unsanitary conditions of the recreation area. The undersigned **FINDS** that Prince's allegations are insufficient to state a claim under the Eighth Amendment and should be dismissed.

### vii. *Double-Celling and Cell Conditions*

Prince alleges that he was "forced to sleep on [the] floor when double bunked in a single bunk room for approximately (6) months." (ECF No. 39 at 7). He contends that

the cell was designed for one person, provided insufficient floor space per occupant, and that he had to keep his property on the floor because he was not provided a locker bay. (*Id.*). "Double-celling" or "the housing of two prisoners in a cell initially designed for single occupancy" is "not itself a violation of the Constitution." *Johnson v. Levine*, 588 F.2d 1378, 1380 (4th Cir. 1978) (citing *Hite v. Leeke*, 564 F.2d 670 (4th Cir. 1977)); s*ee Rhodes v. Chapman,* 452 U.S. 337, 350 (1981); *Bell v. Wolfish,* 441 U.S. 520, 541-44 (1979). However, "when the practice of double-celling inmates is combined with other adverse conditions, double-celling may create an Eighth Amendment violation." *Goodman v. McBride*, No. CIV.A. 5:06-CV-00523, 2007 WL 1821090, at *5 (S.D.W. Va. June 22, 2007) (citations omitted).

In his amended Complaint, Prince contends that he developed "lower back problems causing pain and suffering, mental anguish, and stress daily for nearly (1) year." (ECF No. 39 at 10). He dates those injuries to the period of incarceration prior to his disciplinary charges, which includes the period during which he was double-celled. *See* (*Id.* at 9). Although Prince asserts a potentially viable claim related to physical and emotional injuries due, at least in part, to living in crowded quarters and sleeping on the floor, he again fails to identify the specific defendants whom he alleges are responsible for this alleged violation of his constitutional rights.

Accordingly, as the undersigned **FINDS** that Prince's amended complaint, construed in the light most favorable to Prince, states a potential claim that the conditions of his cell, including the fact that he was forced to sleep on the floor for an extended period of time, constituted cruel and unusual punishment under § 1983, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss as to this claim be

**DENIED** and Prince be given an opportunity to develop this claim and identify the defendants responsible for the alleged violation.

As to the lack of a locker bay, Prince asserts no facts to state a cognizable § 1983 claim. He does not allege that keeping his property on the floor caused him any harm. Rather, he merely states that a locker bay was required by jail policy, which is insufficient to state a claim of constitutional magnitude. Consequently, the undersigned **FINDS** that Prince's claim relating to the absence of a locker bay is without merit and should be dismissed.

### viii. Eating Utensil and Cup

Prince states that he was never given the opportunity to sanitize his cup and "often had to rely on the kindness of other inmates to purchase a spoon for him, or eat with his fingers." (ECF No. 39 at 7). Prince concedes that he received a spoon upon entry to the WRJ, but does not elaborate on what happened to the spoon requiring him to obtain a replacement. (*Id.*). Furthermore, while such inconveniences of jail life may not have been preferable to Prince, he does not allege that they caused him any physical injury, such as malnutrition or illness, nor does he connect these claims to any of the named defendants. *See, e.g., Clary v. Corley*, No. CIV. CCB-12-1874, 2012 WL 5986450, at *3 (D. Md. Nov. 28, 2012) ("While the practice of reusing a spoon and cup after rinsing may be distasteful, there is no indication that Clary suffered actual illness as a result during his brief stay at the Detention Center."); *Tucker v. Olsen*, No. C/A 0:09-3180-JMC, 2010 WL 5600907, at *3 n.3 (D.S.C. Oct. 20, 2010), *report and recommendation adopted,* No. 0:09-CV-03180-JMC, 2011 WL 165390 (D.S.C. Jan. 19, 2011) ("Tucker also complains that he was without his cup and eating utensil; however, he has alleged no

injury as result of this challenged condition.") (citing *Strickler,* 989 F.2d at 1380–81; 42 U.S.C. § 1997e(e)). Therefore, the undersigned **FINDS** that Prince fails to state a claim upon which relief can be granted relating to his eating utensil and cup and that claim should be dismissed.

### ix. Contact Visits

Finally, Prince contends that he was "refused [the] right to contact visit[s] while at WRJ." (ECF No. 39 at 8). While his allegation may be true, Prince did not maintain a constitutional right to contact visits while in the WRJ. *See Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *Waters v. Bass*, 304 F.Supp.2d 802, 806 (E.D. Va. 2004); *Valentine v. Poff*, No. CIV.A. 7:09-CV-00170, 2010 WL 364363, at *4 (W.D. Va. Feb. 1, 2010). Given the fact that Prince asserts no other viable claim related to the denial of contact visits, the undersigned **FINDS** that Prince fails to state a claim related to contact visits upon which relief may be granted.

## IV. <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that the allegations against Executive Director David Farmer be **DISMISSED** on initial screening, (ECF No. 39 at 9); Defendants' Motion to Dismiss Prince's Amended Complaint, (ECF No. 43), be **GRANTED, in part, and DENIED, in part,** as follows. Prince's claims for non-monetary relief, his claims against the defendants in their official capacity, and his claims relating to the grievance process should be **DISMISSED, with prejudice**. Given that the statute of limitations may not

yet have expired, Prince's remaining claims for money damages against the defendants in their personal capacity relating to access to courts, disciplinary measures taken against him, retaliation, recreation area, the lack of a locker bay in his cell, his dining utensil and inability to sanitize his cup, and lack of contact visits should be **DISMISSED, without prejudice**. Lastly, Prince's claims alleging excessive force due to full body restraints and his allegations of cruel and usual punishment due to the conditions of his cell should not be dismissed at this stage of the proceedings. Prince should be granted leave to develop these claims and identify which of the defendants allegedly committed the violations.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*,

727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge

Chambers, Magistrate Judge Eifert, counsel of record, and any unrepresented party.

The Clerk is instructed to provide a copy of this "Proposed Findings and

Recommendations" to Plaintiff and counsel of record.

**FILED:** May 31, 2017

_____
Cheryl A. Eifert
United States Magistrate Judge